**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

In re: LIVE LIFE BELLA VITA LLC AND GARY DORDICK AND NAVA DORDICK, individually and as owner of the 50.5 Foot Solaris sailboat ALLORA Official No. 1282524, for Exoneration From of Limitation of Liability,

------------------------------

LIVE LIFE BELLA VITA, LLC; GARY DORDICK; NAVA DORDICK,

*Third-party-plaintiffs-Appellants*,

v.

CRUISING YACHTS, INC.; CRUISING YACHTS UNLIMITED, INC.; SAIL CALIFORNIA, INC.; DAVEY LUX, INC.; S AND K DIVE SERVICE, INC.; DAVID YOSEF JACOBSON; ROES, 1 to 100, inclusive,

*Third-party-defendants-*

No. 23-55613

D.C. No.
2:22-cv-09244-
JLS-MAA

OPINION

*Appellees*,

and

EDUARDO LOAIZA,

*Claimant-Appellee*.

Appeal from the United States District Court
for the Central District of California
Josephine L. Staton, District Judge, Presiding

Argued and Submitted June 13, 2024
Pasadena, California

Filed September 12, 2024

Before:  Mary H. Murguia, Chief Judge, and Morgan
Christen and Lawrence VanDyke, Circuit Judges.

Opinion by Chief Judge Murguia

# SUMMARY[*]

## Maritime Law

In an action brought under the Limitation of Liability Act by shipowners seeking to limit their liability in connection with a severe injury suffered by maintenance diver Eduardo Loaiza, the panel vacated the district court's order dissolving its injunction precluding other courts, including state courts, from adjudicating claims related to the same accident.

The Limitation Act caps liability so that a shipowner is on the hook for no more than the value of the vessel and its cargo, and creates a special procedure for a federal district court to apportion this money among the injured parties. This procedure requires the district court to enjoin other courts from adjudicating claims related to the same maritime accident. When a shipowner initiates an action under the Limitation Act and multiple claimants seek money damages, the district court retains exclusive jurisdiction over the proceeding.

A claimant may, however, proceed in state court when only one claim has been filed and nothing appears to suggest the possibility of another claim. Because the Limitation Act is meant to distribute a finite fund among multiple claimants, the Act's special procedure is presumably not necessary when only a "single claimant" is involved.

Once the shipowners received notice of the accident in which Loaiza was injured, they sought to limit their liability

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

in federal court, and the district court enjoined all related suits in accordance with the Limitation Act. Loaiza, wishing to pursue his claims in state court, asked the district court to stay its injunction under the "single claimant" exception. The district court granted Loaiza's motion pursuant to the "single claimant" exception, effectively dissolving the injunction and allowing Loaiza to proceed in state court. A third party then filed counterclaims and crossclaims in federal court for indemnity, contribution, declaratory relief, and attorney's fees.

In this interlocutory appeal, the shipowners argued that the "single claimant" exception should not apply because there are third-party claims for indemnification and attorney's fees pending in the federal court action, and therefore multiple claimants to the fund.

The panel held that parties seeking indemnity or contribution are separate claimants in the Limitation Act context, and this case therefore involves multiple claimants. Before dissolving an injunction under the Act, a district court must consider actual *and* potential indemnity and contribution claims from named co-defendants. The fact that the third party has asserted claims for attorney's fees against the shipowners provides a separate basis—in addition to the pending indemnity and contribution claims—for concluding that the limitation proceeding involves multiple claimants.

The panel explained that it is possible for a state court action to proceed even if there are multiple claimants if all co-defendants bind themselves to equivalent multilateral stipulations fully protecting the shipowners' statutory limitation right. The panel held that each party to the district court proceeding, including alleged joint tortfeasors who have not yet asserted claims for identity or contribution,

must make the requisite stipulations before any party may proceed in state court. Given that the third party has not agreed to the same stipulations as Loaiza, the shipowners face uncertain liability from multiple claimants, and the dissolution of the injunction remains improper.

Remanding for the district court to resume the limitation proceeding, the panel instructed the district court to review all claims—including potential claims by other third-party defendants—and revised stipulations consistent with this opinion.

## COUNSEL

Marker E. Lovell, Jr. (argued), Michelle L. Tommey, and Peter R. Witherington, Gibson Robb & Lindh LLP, Emeryville, California, for Third-party-plaintiffs-Appellants.

Daniel D. Geoulla (argued), B&D Law Group APLC, Los Angeles, California, for Claimant-Appellee.

Brian O. Felder, Wilson Elser Moskowitz Edelman & Dicker LLP, Los Angeles, California; John L. Fitzgerald, Pinnacle Law Group, San Francisco, California; Jerry A. Jacobson, Jacobson & Associates PC, Los Angeles, California; Galin Luk, Cox Wootton Lerner Griffin & Hansen LLP, San Francisco, California; for Third-party-defendants-Appellees.

**OPINION**

MURGUIA, Chief Circuit Judge:

More than 150 years ago, Congress enacted the Limitation of Liability Act ("the Limitation Act"), 46 U.S.C. §§ 30501–30530, to protect shipowners from extreme liability resulting from accidents at sea. The Limitation Act caps liability so that a shipowner is on the hook for no more than the value of the vessel and its cargo, and it creates a special procedure for a federal district court to apportion this money among the injured parties. Importantly, this procedure requires the district court to enjoin other courts, including state courts, from adjudicating claims related to the same maritime accident. In short, when a shipowner initiates an action under the Limitation Act and multiple claimants seek money damages, the district court retains exclusive jurisdiction over the proceeding.

Yet courts have carved out exceptions to this exclusive jurisdiction. Relevant here, a claimant may proceed in state court "when only one claim has been filed and 'nothing appears to suggest the possibility of another claim.'" *Newton v. Shipman*, 718 F.2d 959, 962 (9th Cir. 1983) (per curiam) (quoting *Langnes v. Green*, 282 U.S. 531, 540 (1931)). Because the Limitation Act is meant to distribute a finite fund among multiple claimants, the Act's special procedure is presumably not necessary when only a "single claimant" is involved.

This maritime case originated when a maintenance diver, Eduardo Loaiza, suffered a severe injury while servicing a boat underwater. Once the shipowners received notice of the gruesome accident, they sought to limit their liability in federal court, and the district court enjoined all related suits

in accordance with the Limitation Act.  Loaiza, wishing to pursue his claims in state court, asked the district court to stay its injunction under the "single claimant" exception. The district court granted Loaiza's motion pursuant to the "single claimant" exception, effectively dissolving the injunction and allowing Loaiza to proceed in state court.  A third party then filed counterclaims and crossclaims in federal court for indemnity, contribution, declaratory relief, and attorney's fees.

In this interlocutory appeal, the shipowners—Live Life Bella Vita LLC, Gary Dordick, and Nava Dordick (together "the Vessel Owners")—challenge the district court's dissolution of its injunction.  The Vessel Owners argue that the "single claimant" exception should not apply because there are third-party claims for indemnification and attorney's fees pending in the federal court action, and therefore multiple claimants to the fund.  They ask us to decide for the first time whether indemnity claims constitute separate claims for purposes of the Limitation Act.

For the reasons that follow, we agree with the Vessel Owners that third-party indemnity or contribution claimants are separate claimants in the Limitation Act context, and so this case involves multiple claimants.  Accordingly, we vacate the district court's dissolution of the injunction and remand for further proceedings.

I

At all relevant times, the Vessel Owners owned the sailboat *Allora*, which docks in Marina Del Rey, California. On October 6 or 7, 2022, S and K Dive Service, Inc. ("S and K Dive") dispatched Eduardo Loaiza and David Jacobson to inspect the *Allora*—specifically, to examine the bow thruster

and measure the propeller.[1]   Loaiza dove underwater to perform the service, while Jacobson lowered the bow thruster using a control panel onboard the vessel.  Suddenly, Jacobson "activated the propeller at which point its blades viscously [sic] cut through Loaiza's hands."  Loaiza suffered severe injuries from this incident.

On December 20, 2022, the Vessel Owners filed an action for limitation of liability under the Limitation Act in the Central District of California.  Consistent with the Limitation Act's procedural requirements, the Vessel Owners stipulated that the value of the *Allora* was $788,000.00, and provided security to the court in that amount.  Thereafter, on December 29, 2022, the district court provided notice of the ongoing proceeding in a published order.  In addition, the district court prohibited "any [other] suits, actions or legal proceedings . . . in any court wheresoever" arising out of Loaiza's injury.  In other words, the district court's December 2022 order enjoined Loaiza and other potential claimants from filing suit in state court.

On February 28, 2023, Loaiza filed a complaint in Los Angeles County Superior Court.  In March 2023, Loaiza filed counterclaims against the Vessel Owners in the federal action, otherwise known as the "limitation proceeding."  Loaiza also filed a third-party complaint in federal court, bringing claims against S and K Dive, Jacobson, Davey Lux, Cruising Yachts, and Sail California (together "Third-Party

---

[1] A bow thruster is "an auxiliary propulsion device at the bow of a ship to aid in maneuvering."  *Bow Thruster*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/bow%20thruster     (last visited May 14, 2024).

Defendants").[2]   The Vessel Owners responded in federal court by filing their own third-party complaint against the Third-Party Defendants for indemnity and contribution, claiming that the Third-Party Defendants were solely responsible and liable for Loaiza's injuries.

The next month, Loaiza filed separate motions to dismiss the Vessel Owners' initial complaint for lack of admiralty jurisdiction, and to stay the limitation proceeding so that he could pursue his claims in state court.  Attached to the stay motion, Loaiza included the following stipulations:

1)  The value of the applicability of [sic] the limitation fund will be heard and determined by the [district court];

2)  I waive the right to claim res judicata regarding any issues pertaining to limited liability based on any state court judgment rendered against [the Vessel Owners] outside the limitation proceedings before this Court; and

3)  [The district court] maintains exclusive jurisdiction to decide exoneration and limitation of liability issues under the

---

[2] The state court action has essentially remained paused pending the limitation proceeding and this appeal.  *See* Minute Order, *Loaiza v. Cruising Yachts, Inc., et al.*, No. 23SMCV00893 (L.A. Cty. Super. Ct. July 2, 2024).

> Limitation of Liability Act following a state court judgment.

In effect, Loaiza's stipulations recognized the district court's ultimate authority to limit the shipowner's liability, notwithstanding the outcome of the state court litigation.

In June 2023, the district court denied Loaiza's motion to dismiss but granted the motion to stay the limitation proceeding. In granting the motion to stay, the district court effectively dissolved its December 2022 order enjoining suits in any other court and allowed Loaiza to proceed in state court. It did so on the basis that Loaiza was a "sole claimant," despite representations from the Vessel Owners that "there is every reason to expect the imminent filing of additional claims" before the district court, including indemnity and contribution claims from the Third-Party Defendants. The district court reasoned that "[d]amages here will be determined entirely by Loaiza's economic and non-economic damages" and did not see "how any indemnity or contribution claims would affect the overall amount of damages." Consequently, the district court allowed Loaiza to "proceed to litigate his claims in state court," while "retain[ing] jurisdiction over any exoneration or limitation of liability issues arising in this matter."

The Vessel Owners timely appealed. After noticing their appeal, the Vessel Owners filed an amended third-party complaint against the Third-Party Defendants.[3] In October 2023, S and K Dive answered the amended third-party complaint and countersued the Vessel Owners for

---

[3] On August 25, 2023, Loaiza and the Vessel Owners agreed to dismiss Cruising Yachts from the limitation proceeding.

indemnity, contribution, declaratory relief, and "costs of suit and legal and other expenses reasonably incurred."

## II

We have jurisdiction under 28 U.S.C. § 1292(a)(1). *In re Bowoon Sangsa Co.*, 720 F.2d 595, 597 (9th Cir. 1983). We review "[t]he decision to grant a stay or injunction . . . for abuse of discretion." *In re Complaint of Paradise Holdings, Inc.*, 795 F.2d 756, 760 (9th Cir. 1986); *see also Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 440 (2001) (reviewing "whether the District Court abused its discretion in dissolving the injunction"). We review questions of law de novo. *See In re Complaint of Paradise Holdings*, 795 F.2d at 760–61.

"[W]here a shipowner demonstrates that his or her right to limit liability would be prejudiced, the court's lifting of the stay constitutes an abuse of discretion." *Gorman v. Cerasia*, 2 F.3d 519, 523 (3d Cir. 1993) (first citing *Universal Towing Co. v. Barrale*, 595 F.2d 414, 420 (8th Cir. 1979); and then citing *S & E Shipping Corp. v. Chesapeake & Ohio Ry. Co.*, 678 F.2d 636, 647 (6th Cir. 1982) (Kennedy, J., concurring)); *see also In re Complaint of Holly Marine Towing, Inc.*, 270 F.3d 1086, 1090 (7th Cir. 2001) (explaining that "the partial dissolution of the injunction" in a multiple claimant situation deprives the shipowner "of its statutory rights and [is] therefore unreasonable, or equivalently . . . as the cases say, an 'abuse of discretion'").

## III

## A

Before discussing the exceptions to exclusive federal jurisdiction under the Limitation Act, it is helpful to understand a key aspect of admiralty jurisdiction. Federal

courts have jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, *saving to suitors* in all cases all other remedies to which they are otherwise entitled."  28 U.S.C. § 1333(1) (emphasis added); *see also* U.S. CONST. art. III, § 2, cl. 1 ("The judicial Power shall extend . . . to all Cases of admiralty and maritime Jurisdiction.").  The saving-to-suitors clause "preserves remedies and the concurrent jurisdiction of state courts over some admiralty and maritime claims." *Lewis*, 531 U.S. at 445.  For instance, federal courts exercising admiralty jurisdiction do not empanel juries, so "[t]rial by jury is the classic example of a remedy . . . that the saving-to-suitors clause protects." *In re Williams Sports Rentals Inc.*, 90 F.4th 1032, 1036 (9th Cir. 2024) (first citing *Lewis*, 531 U.S. at 454–55; and then citing *Newton*, 718 F.2d at 962).

The upshot of the saving-to-suitors clause is that admiralty plaintiffs may generally file an action in state court or federal court.  But separately, Congress "has vested *exclusive* admiralty jurisdiction in the federal courts for certain admiralty claims."  1 Thomas J. Schoenbaum, *Admiralty & Mar. Law* § 4.2 (6th ed. 2019) (emphasis added).  One category of claims over which federal district courts retain exclusive admiralty jurisdiction arises under the Limitation Act.

Enacted in 1851, the Limitation Act provides that a shipowner's liability "shall not exceed the value of the vessel and pending freight" for "any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner."  46 U.S.C. § 30523(a)–(b).  Basically, the Limitation Act provides that a shipowner is not responsible for losses exceeding the value of the vessel and pending freight.  Moreover, to streamline the

distribution of losses in one setting, the Limitation Act creates "a procedure in admiralty to enjoin all pending suits and to compel them to be filed in a special limitation proceeding." 2 Schoenbaum, *supra*, at § 15:1. The function of the limitation proceeding is to determine "(1) whether the vessel and its owner are liable at all; (2) whether the owner may in fact limit liability to the value of the vessel and pending freight; (3) the amount of just claims; and (4) how the fund should be distributed to the claimants." *Id.* § 15:6; *Gorman*, 2 F.3d at 524.

The Limitation Act and Admiralty Rule F set forth the specifics around the relevant procedure, which begins "when the shipowner files a complaint . . . in the district court in admiralty jurisdiction." 2 Schoenbaum, *supra*, at § 15:6. First, the owner must file the complaint within six months after receiving written notice of a claim. 46 U.S.C. § 30529(a); Fed. R. Civ. P. Supp. R. F(1). Second, the owner must also deposit with the court the "limitation fund"—that is, "an amount equal to the value of the owner's interest in the vessel and pending freight"—or transfer interest in the vessel to a court-appointed trustee. 46 U.S.C. § 30529(b); *see also* Fed. R. Civ. P. Supp. R. F(1). Once both conditions are satisfied, "all claims and proceedings against the owner related to the matter in question shall cease." 46 U.S.C. § 30529(c). The district court "shall enjoin the further prosecution of any action or proceeding against the [owner] or the [owner's] property with respect to any claim subject to limitation in the action." Fed. R. Civ. P. Supp. R. F(3). The district court therefore has exclusive jurisdiction over the limitation proceeding, regardless of whether a claimant has already filed suit in state court.

"Some tension exists between the saving to suitors clause and the Limitation Act." *Lewis*, 531 U.S. at 448. "One

statute gives suitors the right to a choice of remedies, and the other statute gives vessel owners the right to seek limitation of liability in federal court." *Id.*; *see also* 2 Schoenbaum, *supra*, at § 15:7 ("The exclusivity of admiralty jurisdiction in the Limitation Act collides with the 'saving to suitors' clause."). Put simply, the admiralty jurisdiction statute, 28 U.S.C. § 1333(1), preserves a claimant's selection of remedies, including the ability to proceed in state court before a jury; the Limitation Act, on the other hand, prioritizes shipowners' interests and restricts proceedings to a federal forum "if the district court concludes that the vessel owner's right to limitation will not be adequately protected." *Lewis*, 531 U.S. at 454.

To resolve this tension, courts have carved out exceptions to exclusive federal jurisdiction under the Limitation Act. *Id.* at 451. Claims may proceed in state court in two circumstances: (1) "if the limitation fund exceeds the value of all the claims, pro rata distribution is not necessary, and the district court must permit claimants to pursue their separate claims at law and to exercise their right to a jury," *Newton*, 718 F.2d at 962 (citing *Lake Tanker's Corp. v. Henn*, 354 U.S. 147, 152 (1957)); or (2) "when only one claim has been filed and 'nothing appears to suggest the possibility of another claim,' the district court similarly must dissolve its injunction to permit the single claimant to pursue a separate action and a jury trial," *id.* (quoting *Langnes*, 282 U.S. at 540). As mentioned, a "single claimant" situation renders the limitation proceeding largely unnecessary "because there are no additional claimants competing for portions of the limitation fund." *S & E Shipping Corp.*, 678 F.2d at 643.

Although a single claimant may proceed in state court, the "single claimant" exception is not an end-run around

limited liability for the shipowner.  In other words, regardless of the size of any state-court judgment against the shipowner, the shipowner's liability is limited to the value of the limitation fund.  Accordingly, any claimant invoking the "single claimant" exception must make certain stipulations before pursuing claims in state court.  *Newton*, 718 F.2d at 962; *see also Lewis*, 531 U.S. at 455 ("[S]tate courts . . . may adjudicate claims . . . so long as the vessel owner's right to seek limitation of liability is protected.").  Among other things, the required stipulations include recognizing the district court's continuing jurisdiction over issues related to limitation of liability.[4]

Of course, a single claimant's stipulations "provide insufficient protection to a shipowner . . . where there are multiple claimants to a fund that is inadequate to satisfy all claims." *Gorman*, 2 F.3d at 525.  Thus, we must determine at the outset whether the instant limitation proceeding presents a multiple claimant situation.

B

The Vessel Owners principally argue that indemnity and contribution claims by the Third-Party Defendants create a multiple claimant situation.  We recently recognized in *Williams Sports Rentals* that "[c]ourts of appeals have disagreed over whether parties seeking indemnity or contribution count as separate claimants." 90 F.4th at 1038 (declining to "take a position in that circuit conflict"); *see*

---

[4] Specifically, a "claimant must: (1) stipulate that the value of the limitation fund equals the combined value of the vessel and its cargo; (2) waive the right to claim res judicata based on any judgment rendered against the vessel owner outside of the limitation proceedings; and (3) concede the district court's exclusive jurisdiction to determine limitation of liability issues." *Newton*, 718 F.2d at 962.

*also Gorman*, 2 F.3d at 525 ("[C]ourts have struggled to define those situations that present a genuine 'multiple-claims-inadequate-fund' case as opposed to a single claim case."). We now conclude that a party seeking indemnity or contribution is a separate claimant for purposes of the Limitation Act.

We begin with our obligation to ensure that "the vessel owner's right to seek limitation of liability is protected." *Lewis*, 531 U.S. at 455. Indemnity and contribution claims against a shipowner potentially jeopardize this right because they may expose the shipowner to liability above "the value of the vessel and pending freight." 46 U.S.C. § 30523(a); *see also Holly Marine Towing*, 270 F.3d at 1089. As the Third Circuit has explained, if third-party defendants "do not sign protective stipulations with the admiralty court, they would not be foreclosed from recovering against the shipowner for contribution, even though [the shipowner's] liability . . . has already been exhausted." *Gorman*, 2 F.3d at 527. "It is precisely this kind of competition for the limitation fund that the Act was designed to avoid." *Id.* (citing *S & E Shipping*, 678 F.2d at 646–48 (Kennedy, J., concurring)).

This appeal illustrates how a multiple claimant situation involving indemnity or contribution claims could potentially thwart the goals of the Limitation Act. The Vessel Owners seek to cap their liability at $788,000 (the value of the vessel), while Loaiza hopes to recover more than that amount. Meanwhile, S and K Dive has asserted a third-party claim against the Vessel Owners for indemnity, and other Third-Party Defendants may yet do the same. If, for example, Loaiza obtains a state court judgment for $1 million against both the Vessel Owners and the Third-Party Defendants, his stipulations before the district court would

preclude him from obtaining that full amount against the Vessel Owners in the limitation proceeding.  The Third-Party Defendants, however, have not recognized the district court's continuing authority over all limitation matters, and absent any stipulations, they theoretically could attempt to recover the additional $212,000 from the Vessel Owners.  Thus, additional claims brought by the Third-Party Defendants could expose the Vessel Owners to liability in excess of the limitation fund.[5]

We therefore hold that parties seeking indemnity or contribution are separate claimants in the Limitation Act context.  That conclusion is consistent with the prevailing view among circuits to have addressed the same question. *See Williams Sports Rentals*, 90 F.4th at 1038 (summarizing the "majority" and "minority" views); *see also Holly Marine Towing*, 270 F.3d at 1090 (7th Cir.); *Beiswenger Enters. Corp. v. Carletta*, 86 F.3d 1032, 1042 (11th Cir. 1996); *Odeco Oil & Gas Co., Drilling Div. v. Bonnette*, 74 F.3d 671, 675 (5th Cir. 1996); *Gorman*, 2 F.3d at 527–28 (3d Cir.); *In re Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 756 (2d Cir. 1988).  We agree with those circuits that a district court must consider actual *and* potential indemnity and contribution claims from named co-defendants before dissolving an injunction under the Limitation Act.[6]  *See, e.g.*, *Beiswenger*, 86 F.3d at 1042

---

[5] The Vessel Owners do not dispute that this scenario would not foreclose an injured party from recovering the excess amount of a state-court judgment against joint tortfeasors, but the Vessel Owners' exposure may not exceed the value of the limitation fund.

[6] Loaiza suggests that we should disregard out-of-circuit precedent because "an indemnity or contribution claim is wholly derivative of the

("[T]o determine whether a multiple-claims-inadequate-fund situation exists, potential claims for indemnity or contribution from the vessel owner's co-defendants must be separately considered."). Put differently, a district court must evaluate whether a third-party has already asserted such claims, as well as whether there is "the possibility of any other claim." *See Langnes*, 282 U.S. at 540.

Only two circuits, the Eighth and Sixth Circuits, have held that indemnity and contribution claims do not create a multiple claimant situation because those claims are "derivative" of the underlying tort claim. *See Universal Towing*, 595 F.2d at 419 (8th Cir.); *see also S & E Shipping*, 678 F.2d at 645 (6th Cir.) (citing *Universal Towing*, 595 F.2d

---

tort claim" under California law. But California law does not address indemnification claims specifically in the Limitation Act context, or purport to contradict federal law. *See W. Steamship Lines, Inc. v. San Pedro Peninsula Hosp.*, 876 P.2d 1062, 1072 n.13 (Cal. 1994) ("We express no opinion as to the appropriateness of limiting indemnification were the impact with respect to federal law otherwise.").

Moreover, Loaiza does not identify any circuit precedent requiring us to consider state law in determining whether indemnification claims create a multiple claimant situation. In *Williams Sports Rentals*, we looked to California law only "to determine who is entitled to assert wrongful-death and survival claims," *not* to determine whether a wrongful death plaintiff qualifies as a "separate claimant" in a limitation proceeding. 90 F.4th at 1036 (citing *Evich v. Connelly*, 759 F.2d 1432, 1433 (9th Cir. 1985)); *see also Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 408 (1970) (suggesting that state wrongful-death acts may offer "guidance").

Nor is there persuasive out-of-circuit authority suggesting that state law affects whether a multiple claimant situation exists. In *Gorman*, for instance, the Third Circuit simply looked to the general maritime law rather than state law. 2 F.3d at 526–27 (citing *Dammers*, 836 F.2d at 757).

at 419).  But this reasoning overlooks that a third-party claim may nevertheless increase a shipowner's overall liability relative to the limitation fund.  *See S & E Shipping*, 678 F.2d at 648 (Kennedy, J., concurring) ("[A]lthough a judgment in favor of a third party for indemnity or contribution will not increase the total award the plaintiff receives, it may alter the proportion paid by the shipowner and third party."). Notably, the Eighth and Sixth Circuit decisions are older, and "[m]ore recent opinions . . . have disagreed with the[ir] analysis." *Beiswenger*, 86 F.3d at 1042.

Here, because at least one Third-Party Defendant has asserted indemnity and contribution claims, and other Third-Party Defendants still could, the limitation proceeding presents a multiple claimant situation.  *Accord Dammers*, 836 F.2d at 757 ("As long as there is a potential set of circumstances in which a shipowner could be held liable in excess of the limitation fund, the reasonable prospect of claims for indemnification should constitute a multiple claimant situation.").

C

In addition to indemnity and contribution claimants, parties seeking attorney's fees are separate claimants within the meaning of the Limitation Act.  *See Williams Sports Rentals*, 90 F.4th at 1039.  We have previously explained that "[a]ttorney's fees are 'separate from any claims for liability,' so they are not derivative of the injured party's claim." *Id.* (quoting *S & E Shipping*, 678 F.2d at 646).  Such claims "simply add to the sum that the claimants seek," *id.*, and therefore also jeopardize exposing a shipowner to excess

liability.[7]  Even the two circuits that do not view indemnity and contribution claimants as separate understand claims for attorney's fees as creating a multiple claimant situation. *E.g.*, *S & E Shipping*, 678 F.2d at 645–46 (6th Cir.); *Universal Towing*, 595 F.2d at 419 (8th Cir.); *see also Gorman*, 2 F.3d at 525 ("[A]ll courts have recognized that a multiple claimant situation exists where a third party seeking indemnity or contribution also requests attorneys' fees and costs associated with its claim.").

S and K Dive has countersued the Vessel Owners for indemnity, contribution, declaratory relief, and attorney's fees.  Although S and K Dive did not do so until after the dissolution of the district court's injunction, it is well-established that a limitation proceeding may evolve into a multiple claimant situation over time if a party adds new claims.  *See Williams Sports Rentals*, 90 F.4th at 1038 (acknowledging that the case previously "involved a single claimant" but "ha[d] expanded" since then).  The fact that S and K Dive has now asserted claims for attorney's fees against the Vessel Owners provides a separate basis—in addition to the pending indemnity and contribution claims—for concluding that the limitation proceeding involves multiple claimants.

---

[7] Loaiza maintains that *Williams Sports Rentals* "did not address or explain the derivation of any such attorney's fees claims under California law," but he does not meaningfully dispute that *Williams Sports Rentals* is binding precedent.  In any event, the district court has not had the opportunity to address S and K Dive's claim for attorney's fees, and we decline to do so at this juncture.  *See Gorman*, 2 F.3d at 528 (declining to reach whether attorney's "fees can or will be awarded by the district court"); *see also id.* at 528 n.11 (same).

D

Our conclusion that this case presents a multiple claimant situation is not the end of our inquiry. As previously explained, a single claimant must agree to protect the shipowner's right to limit liability in the district court before moving forward in state court. *Newton*, 718 F.2d at 962. Because "such a stipulation fully protects the limitation right," it is possible for a state court action to proceed "even if there are multiple claimants" given the appropriate stipulations. *Williams Sports Rentals*, 90 F.4th at 1038. Therefore, to determine whether the district court's dissolution of the injunction jeopardizes the Vessel Owners' statutory right to limitation, we must assess "whether the safeguards embodied in the . . . stipulation[s] and the district court's decision are . . . sufficient to satisfy the provisions and policies of the [Limitation] Act." *Dammers*, 836 F.2d at 757.

The Vessel Owners maintain that Loaiza's current, unilateral stipulations are inadequate because "[t]he stipulations must be signed by *all* claimants, including the Third-Party Defendants asserting contribution or indemnity claims against the Vessel Owners." Loaiza, for his part, proposes that he could "execute a revised stipulation alone to take the Third-Party Defendants' attorney's fees claims and indemnity and contribution claims into account." We agree with the Vessel Owners that all co-defendants must bind themselves to equivalent stipulations before a district court lifts its injunction under the Limitation Act.

Because third-party claims otherwise could increase a shipowner's total liability above the value of the limitation fund, *see Gorman*, 2 F.3d at 527, we hold that each party to the district court proceeding, including alleged joint

tortfeasors who have not yet asserted claims for indemnity or contribution, must make the requisite stipulations before any party may proceed in state court. *Accord Odeco Oil & Gas Co.*, 74 F.3d at 675 ("[I]n order to proceed in state court, *all claimants* must sign the stipulation protecting the shipowner's rights under the Limitation Act."); *Holly Marine Towing*, 270 F.3d at 1090 (recognizing that "if all the claimants stipulate that their claims will not subject [the shipowner] to liability beyond the [limitation] amount, then he is fully protected").[8]

Again, requiring multiple claimants to enter stipulations before the district court does not necessarily preclude claimants from enjoying their choice of remedies and

---

[8] Our conclusion is consistent with most other circuits to have faced the same question. *Williams Sports Rentals*, 90 F.4th at 1038 (summarizing other courts of appeals as holding that "unless a party seeking indemnity or contribution enters a stipulation *of its own*, it is a separate claimant whose threat to the owner's limitation right may justify an injunction" (emphasis added)); 2 Robert Force & Martin J. Norris, *Law of Mar. Pers. Injs.* § 15.10 (5th ed. 2023).

We recognize that some circuits have upheld unilateral stipulations when no third-party claims are pending. *E.g.*, *Dammers*, 836 F.2d at 759 (2d. Cir.) (finding a unilateral stipulation sufficient where no third-party had asserted claims and the injured longshoreman agreed to protect the shipowner against "any other liable parties who *may* cross-claim or claim over the plaintiffs" (emphasis added)); *Beiswenger*, 86 F.3d at 1040, 1043–44 (11th Cir.) (concluding that a unilateral stipulation "converted this case into the functional equivalent of a single claim case" because "[a]ppellees have promised not to enforce any state court judgment . . . against *any* party, including . . . co-defendants, until [the shipowner's] right to limitation is adjudicated in the admiralty court"). Even assuming that a unilateral stipulation could sufficiently safeguard a shipowner from not-yet-alleged claims, that situation is not presented here. Regardless, district courts must consider joint tortfeasors' potential claims when deciding whether to stay an injunction.

proceeding in state court, as guaranteed by the saving-to-suitors clause.   We remain mindful that "[t]o retain the cause" in federal court "would be to preserve the right of the shipowner, but to destroy the right of the [claimant] in the state court to a commonlaw remedy." *Langnes*, 282 U.S. at 541.   But out of an abundance of caution, multilateral stipulations ensure that the shipowner's right to limit liability is protected.   Once stipulations are in place, then "remit[ting] the cause to the state court would be to preserve the rights of [all] parties."  *Id.*  Only after a district court "satisfies itself that a vessel owner's right to seek limitation will be protected" is "the decision to dissolve the injunction . . . within the court's discretion." *Lewis*, 531 U.S. at 454.

Turning back to the limitation proceeding here, S and K Dive has asserted claims for attorney's fees and indemnity and contribution, but it has not provided the stipulations required under *Newton*.   718 F.2d at 962.   Given that S and K Dive has not agreed to the same stipulations as Loaiza, the Vessel Owners face uncertain liability from multiple claimants, and the dissolution of the injunction remains improper.  *See Gorman*, 2 F.3d at 529 ("On remand, if the parties amend the protective stipulations in a manner that satisfies the concerns we have identified, the district court may permit their state tort claims against [the shipowner] to proceed.").

## IV

In conclusion, a third-party claim for indemnity, contribution, or attorney's fees creates a multiple claimant scenario under the Limitation Act.  And whenever multiple claimants threaten a shipowner's right to limit liability, all claimants must enter stipulations before a district court may dissolve an injunction and permit the parties to proceed in

state court.  Because the instant case involves multiple actual and potential claims and Loaiza's unilateral stipulations are inadequate to protect the Vessel Owners' right to limitation, we vacate the portion of the district court's order that effectively permitted Loaiza to pursue his state court action.

As a result, the district court's December 2022 injunction against "any suits, actions or legal proceedings . . . in any court wheresoever" arising out of Loaiza's injury is reinstated.  We remand for the district court to resume the limitation proceeding.  On remand, the district court shall review all claims—including potential claims by other Third-Party Defendants— and revised stipulations consistent with this opinion and *Williams Sports Rentals*.

**VACATED IN PART AND REMANDED.**